<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

SAMMIE CHISOLM,                     :
                                    :   Civil Action No. 10-2900 (JAP)
            Petitioner,             :
                                    :
            v.                      :   **OPINION**
                                    :
MICHELLE R. RICCI, et al.,          :
                                    :
            Respondents.            :


**APPEARANCES:**

> SAMMIE CHISOLM, Petitioner *pro se*
> # 421740/202198C
> New Jersey State Prison
> P.O. Box 861
> Trenton, New Jersey 08625
>
> DIT MOSCO, ESQ.
> WARREN COUNTY PROSECUTOR'S OFFICE
> 213 Second Street
> Belvidere, New Jersey 07823
> Counsel for Respondents

**PISANO**, District Judge

Petitioner Sammie Chisolm ("Petitioner" or "Chisolm"), a convicted state prisoner presently confined at the New Jersey State Prison in Trenton, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his New Jersey state court judgment of conviction entered on or about June 15, 2001. For the reasons stated herein, the Petition is dismiss as time-barred.

I.   BACKGROUND

A.   Procedural History

On or about February 24, 1999, a Warren County Grand Jury indicted Chisolm with the following offenses:   (Count One) purposeful or knowing murder, in violation of N.J.S.A. 2C:11-3a(1) or (2); (Count Two) third degree possession of a weapon for an unlawful purpose, in violation of N.J.S.A. 2C:39-4d; and (Count Three) fourth degree unlawful possession of a weapon, in violation of N.J.S.A. 2C:39-5d.   (Ra7,[1] Def./App's Brief and

---

[1] "Ra" refers to the Respondents' appendix of exhibits that comprise the relevant state court record in this matter.   The exhibits are identified as follows:

Ra1: State's Memorandum in Support of Answer.
Ra2: State's Brief and Appendix on Motion for Leave to Appeal.
Ra3: State's Brief and Appendix, A-00432-00.
Ra4: Defendant/Respondent's Brief, A-00432-00.
Ra5: *State v. Chisolm*, A-00432-00 (App. Div. May 3, 2001).
Ra6: State's Brief and Appendix on Direct Appeal, A-6291-00.
Ra7: Defendant/Appellant's ("Def./App's") Brief and Appendix on Direct Appeal, A-6291-00.
Ra8: *State v. Chisolm*, A-6291-00 (App. Div. Oct. 23, 2003).
Ra9: *State v. Chisolm*, A-6291-00, Certification Denied (Feb. 3, 2004).
Ra10: Order Denying Petition for Post-Conviction Relief ("PCR")(Oct. 5, 2005).
Ra11: State's Brief and Appendix on PCR Appeal, A-1302-05.
Ra12: *State v. Chisolm*, A-1302-05 (App. Div. Oct. 26, 2006).
Ra13: *State v. Chisolm*, 189 N.J. 430 (2007).
Ra14: State's Brief in Opposition to Motion to Consider Defendant's Appeal Unopposed.
Ra15: Order Denying Motion to Suppress Brief (App. Div. Sep. 4, 2008).
Ra16: State's Brief and Appendix, A-2188-07.
Ra17: *State v. Chisolm*, 2009 WL 3849680 (App. Div. Nov. 13, 2009).

Appendix on Direct Appeal at Da1-Da3, Indictment No. 99-02-0085-1, Feb. 24, 1999.)

A pretrial motion to suppress evidence was held before the Honorable John F. Kingfield, J.S.C., on December 8, 1999.  Judge Kingfield denied the motion.  (1T, 98:8-15.)  The court also conducted a hearing on other motions by defense counsel in which

---

Ra18: *State v. Chisolm*, C-668 September Term 2009, (Denial of Petition for Certification of A-2188-07).
Ra19: Def./App's Notice of Petition for Certification, Nov. 27, 2003.
Ra20: Petitioner's Letter and Appendix on PCR Petition, May 12, 2005.
Ra21: Def./App's Brief and Appendix, A-1303-05.
Ra22: Notice of Motion to File Notice of Petition for Certification *Nunc Pro Tunc*, A-1302-05.
Ra23: Def./App's Brief, A-2188-07.
Ra24: Def./App's Appendix, A-2188-07.
Ra25: Def./App's Reply Brief and Appendix, A-2188-07.
Ra26: Notice of Petition for Certification, A-2188-07.

Transcripts of the state court proceedings are identified as follows:

1T:  Transcript of Motion, December 8, 1999.
2T:  Transcript of Jury Selection, April 10, 2000.
3T:  Transcript of Trial, April 17, 2000.
4T:  Transcript of Trial, April 18, 2000.
5T:  Transcript of Trial, April 24, 2000.
6T:  Transcript of Trial, April 25, 2000.
7T:  Transcript of Trial, April 26, 2000.
8T:  Transcript of Trail, Part I, May 1, 2000.
9T:  Transcript of Trial, Part II, May 1, 2000.
10T: Transcript of Trial, May 2, 2000.
11T: Transcript of Motion, June 23, 2000.
12T: Transcript of Motion, July 14, 2000.
13T: Transcript of Sentence, June 15, 2001.
14T: Transcript of PCR Motion, September 29, 2005.

the court ruled that defendant's statements to the police were admissible.  (4T, 46:22-50:13.)

A jury trial was held on April 10, 17, 18, 24, 25, 26, and May 1 and 2, 2000, with Judge Kingfield presiding.  On May 2, 2000, the jury found Petitioner guilty on all charges.  (10T, 3:1-4:12.)

On May 11, 2000, Petitioner filed a motion for a new trial claiming there was insufficient evidence to support the verdict, and that the jury instruction on the lesser-included offense of passion/provocation manslaughter was improper.  Petitioner also alleged prosecutorial misconduct during closing argument.  The trial court heard oral argument on Petitioner's motion on June 23, 2000.  At the hearing, the trial court denied Petitioner's motion for a new trial, however, on its own motion, the court raised the issue of an improper jury charge on whether purposeful or knowing murder was adequate in light of a recent New Jersey Supreme Court decision in *State v. Cruz*, 163 N.J. 403 (2000).  (11T, 3:1-13:6.)  On July 14, 2000, the court found that the jury charge, in light of *Cruz*, was inadequate and granted a new trial.  (12T, 14:17-18:17.)

The State then filed an interlocutory appeal from the Order granting a new trial.  In a decision filed on May 3, 2001, the Superior Court of New Jersey, Appellate Division reversed the

4

trial's court order,[2] reinstated the conviction, and remanded the matter for sentencing.  (Ra5, May 3, 2001 Opinion at 7.) Petitioner was sentenced on June 15, 2001, to an aggregate term of 40 years in prison, with 30 years parole ineligibility. (13T, 20:5-21:7.)

On July 30, 2001, Petitioner filed a direct appeal from his conviction and sentence before the Appellate Division.   On October 23, 2003, the Appellate Division affirmed the conviction and sentence.  (Ra8.)  The Supreme Court of New Jersey denied certification on February 3, 2004.  (Ra9.)  Petitioner did not file a petition for a writ of certiorari with the Supreme Court of the United States.

Petitioner filed his first *pro se* petition for post-conviction relief ("PCR") in state court on or about March 8, 2004.[3]  (Ra21, Def./App's Brief and Appendix at Da28-Da30.)  An amended PCR petition with a supporting brief by appointed counsel was filed on May 12, 2005.  (Ra20.)  In a written

---

[2] The Appellate Division held that there was no indication in *Cruz* that it was to be applied retroactively.  The Appellate Division also observed that the jury charge given by the trial court closely tracked the model jury charge with the "practical certainty of death" instruction, which calls for a higher standard than required by *Cruz*.  (Ra5, May 3, 2001 Opinion at 6-7.)

[3] Petitioner signed and dated his first *pro se* PCR petition on March 8, 2004, but it was date-stamped received by the state court on April 5, 2004.  (Ra21, Def./App's Brief and Appendix at Da30, Da31.)

decision and Order filed on October 5, 2005, the Honorable John H. Pursel, J.S.C., denied Petitioner's request for an evidentiary hearing and post-conviction relief. (Ra10.) Petitioner promptly appealed from the Order denying his PCR petition. (Ra21.) On October 26, 2006, the Appellate Division affirmed the decision denying the PCR petition. (Ra12.) The Supreme Court of New Jersey denied certification on January 29, 2007. (Ra13.)

On September 12, 2007, Petitioner filed his second *pro se* PCR petition. (Ra24, Def./App's Appendix, A-2188-07T4, at 28a-74a.) In a written decision and Order filed on December 3, 2007, Judge Pursel denied Petitioner's request for post-conviction relief. (Ra24, Def./App's Appendix, A-2188-07T4, at 75a-82a.) Petitioner appealed from the decision denying his second PCR petition. (Ra23.) While the appeal was pending, Petitioner also filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 in this District Court, on or about December 6, 2007. (*See Chisolm v. Ricci*, Civil No. 07-5875 (JAP)). That action was dismissed without prejudice, on December 13, 2007, as a mixed petition, for failure to exhaust state court remedies. (*See Chisolm v. Ricci*, Civil No. 07-5875 (JAP), Dkt. # 2 at ¶¶ 7-13.)

6

On November 13, 2009, the Appellate Division affirmed the denial of Petitioner's second PCR petition substantially for the reasons expressed by Judge Pursel in his December 3, 2007 opinion. (Ra17, *State v. Chisolm*, 2009 WL 3849680, *2 (N.J.Super. A.D. Nov. 13, 2009)). The Supreme Court of New Jersey denied certification on February 25, 2010. (Ra18.)

On June 1, 2010, Petitioner filed this habeas petition pursuant to 28 U.S.C. § 2254.[4] (Dkt. # 1.) The State filed an answer and the relevant state court record on January 11, 2012. (Dkt. ## 19, 20.) On February 3, 2012 and February 21, 2012, the State filed additional documents from the state court record. (Dkt. ## 21, 23.) Petitioner filed his traverse or reply on March 15, 2012. (Dkt. # 30.) This Court denied

---

[4] Pursuant to the "prison mailbox rule," a habeas petition is deemed filed on the date the prisoner delivers it to prison officials for mailing, not on the date the petition is ultimately filed with the court. *See Houston v. Lack*, 487 U.S. 266, 270-71 (1988); *see also Burns v. Morton*, 134 F.3d 109, 112-13 (3d Cir. 1988) (applying prison mailbox rule set forth in *Houston*, which dealt with filing of an appeal, to a pro se prisoner's filing of a habeas petition). Often times, when the Court is unable to determine the exact date that a petitioner handed his petition to prison officials for mailing, it will look to the signed and dated certification of the petition. *See Henderson v. Frank*, 155 F.3d 159, 163-64 (3d Cir. 1988) (using date prisoner signed petition as date he handed it to prison officials for purposes of calculating timeliness of habeas petition). In this § 2254 habeas petition, Petitioner signed his petition on June 1, 2010. Therefore, the Court will use that date for statute of limitation purposes, as the date this habeas action was filed, rather than the date the petition was received by the Clerk's Office, which was June 2, 2010.

Petitioner's motions for appointment of counsel and for an evidentiary hearing in an Opinion and Orders filed May 31, 2012. (Dkt. ##, 32, 33, and 34.)

B.  Factual Background

The facts of this case, as recounted by the state court on direct review, are afforded appropriate deference under 28 U.S.C. § 2254(e)(1). Accordingly, this Court will simply recite the factual findings, as set forth in the published opinion of the Superior Court of New Jersey, Appellate Division, decided on October 23, 2003, with respect to Petitioner's direct appeal, as follows:

> The evidence can be summarized as follows. On September 25, 1998, defendant was at the home of his friends James Truss (Ricky) and Davene Cartegena. During the visit, defendant consumed at least four beers. In the early evening, he saw Qia Walters, his girlfriend, in a car at a gas station across the street from the Truss residence and called her over. Walters parked the vehicle in front of the house. Sitting in the passenger seat of the car was her female friend, Demetrius Wideman, and Walter's baby daughter. Defendant had arranged to spend the evening with Walters, but Walters told him that she was going to spend the evening with Wideman. An argument ensued between defendant and Walters. They walked around the corner of the house and continued their argument. Wideman remained in the vehicle. Eventually, defendant and Walters returned to the vehicle. Defendant pushed Walters back into the car.
>
> Defendant then walked around to the passenger side of the vehicle. According to the State, defendant blamed Wideman for his problems with Walters. Defendant told Wideman, "I should hit you in the face, you stupid bitch." Defendant opened the car door, grabbed Wideman's clothing and pulled

her hair.  He also scratched Wideman on the chest, hit her between her neck and jaw, and pulled out some of her hair extensions.  Wideman eventually shut and locked the car door.  Defendant told Wideman to "go get whoever you want." Wideman responded that she'd be right back.

After Walters and Wideman drove off, defendant and Ricky Truss started drinking again.  They were joined by Cartegena and Guy Shupe.  Defendant was angry and said to his drinking companions:

> [y]ou all mother f[@*#]ers think I'm a joke.  I
> ain't no joke.  I'll show you all my Newark
> style.

Fifteen minutes later, Wideman returned to the Truss residence with her father, George Davis.  Davis began to take off his jewelry and asked who Sammie was.  After defendant was identified, Davis threw a punch at his face. Wideman also hit defendant.  Defendant stumbled back but did not fall.  Defendant then pulled a knife out and stabbed Davis once in the chest.  Davis pushed his daughter out of the way and indicated that he had been stabbed before collapsing to the ground.  Defendant kicked Davis several times in the face.  Defendant's friends pulled him away from the body.  Wideman fled to a gas station across the street and called the police.  Truss performed CPR on Davis.  Defendant, with Shupe following, ran into the basement of Truss' residence.  Cartegena ordered them to leave the basement.  Defendant dropped the knife and left the building.  He and Shupe ran down the street.

Phillipsburg Police Patrolman Shawn Carmody responded to the scene with his partner, Officer Kisselbach.  Carmody asked the gathering crowd if there were any witnesses. Cartegena explained the incident to Carmody.  She led Carmody to the basement and opened up the door.  Carmody called for backup.  Warren County Police Officer Kenneth Decker and Detective Robert Bunn assisted Carmody in searching the basement.  They found the kitchen knife and secured the area.

Someone on the street informed Officer Reppert that defendant was at Laramy Furman's home.  Decker and additional law enforcement officers went to Furman's

9

residence.   On the way there, they met Furman, who stated that defendant might possibly be at his home.   He agreed to escort the officers to his home and let them in.   Upon arriving at Furman's home, Decker was able to see through a window an unidentified male, later identified as defendant, lying on a couch watching television.   Defendant surrendered.

Defendant was put in a holding cell at police headquarters for several hours.   Finally, he was brought to detective Sergeant Marino's office for questioning.   Defendant was read his rights.   When defendant asked how Davis was doing, Sergeant Mirabelli told him that the "last time he checked with the hospital the guy was doing all right."   Defendant then confessed in a taped statement that he stabbed Davis.

Walters testified for the defense.   Although Walters minimized the amount of violence displayed by defendant, she corroborated the arguments that took place between her and defendant, and defendant and Wideman.

Defendant testified on his own behalf.   He told the jury that he had lied during the taped statement.   He also testified that he had obtained the knife from Ricky Truss and put it in the side of his pants as a precautionary measure.   He was planning to leave after the arguments with Walters and Wideman, but decided to stay and have one more beer.   When Davis confronted him, he stated that he had no time to think or say anything prior to the stabbing.   He was hit by Wideman and her father, which caused him to see "flashes of lights."   When asked what was on his mind when he stabbed Davis, defendant stated, "I didn't want him to beat me up."   Defendant later said, "the guy was attacking me.   I was defending myself.   I figured that, you know, I'd probably do like two, three years in jail for it ... ."   He also told the detectives, "the guy was bigger than I was and he was going to kick my ass ... and I didn't let him."

On cross-examination, defendant admitted that he initially lied to Detective Mirabelli when he told him that it was merely a fistfight.   Defendant explained, "I didn't know what I was getting into.   I wasn't going to say that I did something when I didn't know what I was walking into."

10

(Ra8, App. Div. Op., Oct. 23, 2003, *State v. Chisolm*, Docket No. A-6291-00T4 slip op. at 2-6.)

## II.  STATEMENT OF CLAIMS

Petitioner asserts the following claims in his petition for habeas relief:

**Ground One**:  Petitioner was denied his right to a fair trial when the trial court denied him the opportunity to introduce into evidence that he had been "jumped" and his father stabbed to death.

**Ground Two**:  Petitioner was denied his rights under the Fourth and Fourteenth Amendment when his motion to suppress was denied.

**Ground Three**:  Petitioner was denied due process when his motion for a new trial based on insufficient evidence was denied.

**Ground Four**:  Petitioner was denied his constitutional rights to a fair trial and against self-incrimination when his confession was admitted into evidence at trial.

**Ground Five**:  Petitioner was denied a fair trial due to prosecutorial misconduct during closing arguments.

**Ground Six**:  Petitioner's warrantless arrest without probable cause and/or exigent circumstances violated his rights under the Fourth and Fourteenth Amendments.

11

**Ground Seven**:   The Appellate Division's reversal of the trial court's order granting a new trial was contrary to, and an unreasonable application of, federal law.

**Ground Eight:**   The trial court's supplemental jury instruction on passion/provocation manslaughter precluded the jury from full consideration of a lesser included offense.

**Ground Nine:**   The Appellate Division's denial of Petitioner's motion for post-conviction relief without an evidentiary hearing was both contrary to, and an unreasonable application of, federal law.

**Ground Ten:**   Petitioner was denied effective assistance of appellate counsel for counsel's failure to raise issue of erroneous jury instructions.

**Ground Eleven:**   Petitioner was denied effective assistance of trial counsel in violation of his Sixth Amendment rights.

The State essentially contends that the petition is without merit, or fails to raise a claim of federal constitutional dimension that would entitle Petitioner to habeas relief.   The State also argues that the petition is time barred.

Because this Court has determined that this petition is time-barred, for the reasons set forth below, there is no need to reach the merits of Petitioner's claims for habeas relief.

III.  <u>DISCUSSION</u>

The State asserts that this habeas petition is time-barred under 28 U.S.C. § 2244(d), which states in relevant part:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to a judgment of a State court. The limitation period shall run from the latest of—

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Therefore, pursuant to the applicable statute of limitations provision, evaluating the timeliness of the instant petition first requires a determination of when petitioner's state court judgment became final.  The judgment is determined to be final by the conclusion of direct review, or the expiration of time for seeking such review, including the ninety-day period for filing a petition for writ of certiorari in the United States Supreme Court. *See Gonzalez v. Thaler*, --- U.S. ----, 132 S.Ct. 641, 653-54, 181 L.Ed.2d 619 (2012).

However, the statute of limitations may be statutorily tolled during the time in which properly filed state post-

conviction relief petition is pending.   *See* 28 U.S.C. § 2244(d)(2).   The Third Circuit has explained that:

> A prisoner's application for state collateral review is "'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings[,]" *Artuz v. Bennett*, 531 U.S. 4, 8, 121 S.Ct. 361, 148 L.Ed.2d 213 (2000) (emphasis omitted), including "time limits, no matter their form," *Pace v. DiGuglielmo*, 544 U.S. 408, 417, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005). Thus, if a state court determines that an application is untimely, "'that [is] the end of the matter' for purposes of statutory tolling of AEDPA's limitation period, *id.* at 414 (quoting *Carey v. Saffold*, 536 U.S. 214, 226, 122 S.Ct. 2134, 153 L.Ed.2d 260 (2002)), "regardless of whether it also addressed the merits of the claim, or whether its timeliness ruling was 'entangled' with the merits[,]" *Carey*, 536 U.S. at 226. But if a state court fails to rule clearly on the timeliness of an application, a federal court "must ... determine what the state courts would have held in respect to timeliness." *Evans v. Chavis*, 546 U.S. 189, 198, 126 S.Ct. 846, 163 L.Ed.2d 684 (2006).[5]

*Jenkins v. Superintendent of Laurel Highlands*, 705 F.3d 80, 85-86 (3d Cir. 2013).   Furthermore, the 90-day time period during which a state prisoner may file a petition for writ of certiorari in the United States Supreme Court from the denial of his state post-conviction petition does not toll the one-year statute of limitations under 28 U.S.C. § 2244(d)(2).   *Lawrence v. Florida*, 549 U.S. 327, 332 (2007).

---

[5] In *Evans*, the Supreme Court also held that the time between denial of post-conviction relief and the filing of an appeal from that decision was not tolled where the appeal was untimely, even where the state court considered the untimely appeal on the merits. *Evans*, 546 U.S. at 191.

14

In this case, the State argues that Petitioner's second PCR petition was not properly filed as contemplated under 28 U.S.C. § 2244(d)(2) for purposes of tolling the one-year limitations period because it was untimely submitted in state court.[6] This Court's review of the state court decisions on the second PCR petition reveal that no timeliness determination actually was made. In fact, while the Appellate Division noted that the State had not affirmatively asserted a time-bar objection to the second PCR petition, the court "by-pass[ed] the procedural question" in light of its ruling that the petition was procedurally barred on the grounds that Petitioner's jury instruction claim was previously and expressly adjudicated under *N.J.Ct.R.* 3:22-5, and did not meet any of the criteria for exception under N.J.Ct.R. 3:22-4. The court also found that Petitioner's ineffective assistance of appellate counsel claim was substantially meritless. (Ra17, *State v. Chisolm*, 2009 WL 3849680, at *1.)

Nevertheless, while the state court did not expressly rule on the timeliness issue, this Court "must ... determine what the state courts would have held in respect to timeliness." *Evans*,

---

[6] The State argues that the one-year limitations period began to run on January 31, 2007, when the Supreme Court of New Jersey denied certification on appeal from denial of Petitioner's first state PCR petition. Thus, Petitioner had until January 31, 2008 to file his federal habeas petition. He did not file this habeas petition until June 1, 2010.

15

546 U.S. at 198.   First, the Court must look to state court law on this issue.   At the time of filing of Petitioner's second state PCR petition, Rule 3:22-12(a) provided:

> A petition to correct an illegal sentence may be filed at any time.   No other petition shall be filed pursuant to this rule more than five years after rendition of the judgment or sentence sought to be attacked unless it alleges facts showing that the delay beyond said time was due to defendant's excusable neglect.

Application of this Rule has been described as "rigorous" to be applied "in accordance with its plain meaning." *State v. Murray*, 162 N.J. 240, 248-49 (2000)(citing *State v. Mitchell*, 126 N.J. 565, 576-578 (1992).

Generally, to overcome the strictures of Rule 3:22-12, the petitioner must show (1) facts demonstrating "excusable neglect;" or (2) "exceptional circumstances" that would warrant relaxation of the Rule.   *Mitchell*, 126 N.J. at 576-578; *State v. Afanador*, 151 N.J. 41, 52 (1997); *State v. Cruz*, 2009 WL 4251014, at *3 (N.J. Super. A.D. Nov. 18, 2009).   At the time Petitioner filed his second state PCR petition, the five-year limitation in Rule 3:22-12 commenced on the actual entry of the judgment of conviction and was not stayed nor tolled by other review proceedings.   *Id*.

Here, it is doubtful that Petitioner could have convinced the state courts to relax the time bar on his second state PCR

petition pursuant to Rule 3:22-12.  Indeed, the state courts
applied the procedural bar under Rule 3:22-4 and Rule 3:22-5,
because the claims asserted by Petitioner could have been raised
in his first PCR petition or were previously litigated on either
direct appeal or in his first PCR petition.  Thus, under these
circumstances, Chisolm cannot show facts sufficient to support
excusable neglect.

The Court further notes that Rule 3:22-12 has since been
amended, effective February 2010, well after Petitioner filed
his second PCR petition.[7]  However, even under the new Rule,

---

[7] Rule 3:22-12(a) was amended, effective February 2010, and
provides, in pertinent part, as follows:

(1) *First Petition For Post-Conviction Relief*. Except as
provided in paragraphs (a)(2), (a)(3), and (a)(4) of this
rule, no petition shall be filed pursuant to this rule more
than 5 years after the date of entry pursuant to Rule 3:21-
5 of the judgment of conviction that is being challenged
unless it alleges facts showing that the delay beyond said
time was due to defendant's excusable neglect and that
there is a reasonable probability that if the defendant's
factual assertions were found to be true enforcement of the
time bar would result in a fundamental injustice.

(2) *Second or Subsequent Petition for Post-Conviction
Relief*. Notwithstanding any other provision in this rule,
no second or subsequent petition shall be filed more than
one year after the latest of:

(A) the date on which the constitutional right asserted was
initially recognized by the United States Supreme Court or
the Supreme Court of New Jersey, if that right has been
newly recognized by either of those Courts and made
retroactive by either of those Courts to cases on
collateral review; or

regarding second or subsequent PCR petitions, Petitioner's second action would have been untimely. None of the exceptions listed under the new Rule apply in this instance. *See* this Opinion, *supra,* at fn. 8.

Consequently, this Court finds that statutory tolling of the AEDPA one-year time limitation, pursuant to 28 U.S.C. § 2244(d)(2) is not available to Petitioner. His second PCR petition did not serve to toll the limitations period, which began to run on January 31, 2007, when the Supreme Court of New Jersey denied certification on appeal from denial of Petitioner's first state PCR petition. Thus, Petitioner had until January 31, 2008 to file his federal habeas petition. He did not file this habeas petition until June 1, 2010, more than

---

(B) the date on which the factual predicate for the relief sought was discovered, if that factual predicate could not have been discovered earlier through the exercise of reasonable diligence; or

(C) the date of the denial of the first or subsequent application for post-conviction relief where ineffective assistance of counsel that represented the defendant on the first or subsequent application for post-conviction relief is being alleged.

Rule 3:22-12(c) also states: "These time limitations shall not be relaxed, except as provided herein." *See also* R. 1:3-4(c) ("Neither the parties nor the court may ... enlarge the time specified by ... R. 3:22-12 ...."). Further, pursuant to Rule 3:22-4(b)(1), "[a] second or subsequent petition for post-conviction relief shall be dismissed unless ... it is timely under R. 3:22-12(a)(2)." It is clear to us that defendant failed to file his second PCR petition in a timely fashion.

two years beyond the limitations period. Accordingly, this federal habeas petition is time-barred.

However, in *Holland v. Florida*, the Supreme Court held that AEDPA's one-year limitations period is subject to equitable tolling in appropriate cases. --- U.S. ----, 130 S.Ct. 2549, 2554, 2560, 177 L.Ed.2d 130 (2010); *Ross v. Varano*, 712 F.3d 784, 798 (3d Cir. 2013). A litigant seeking equitable tolling bears the burden of establishing two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Holland*, --- U.S. ----, 130 S.Ct. at 2562 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *see also Jenkins*, 705 F.3d at 89.

The diligence required for equitable tolling is reasonable diligence, not maximum, extreme, or exceptional diligence. *Holland*, 130 S.Ct. at 2565. "This obligation does not pertain solely to the filing of the federal habeas petition, rather it is an obligation that exists during the period appellant is exhausting state court remedies as well." *LaCava v. Kyler*, 398 F.3d 271, 277 (3d Cir. 2005) (citing *Jones*, 195 F.3d at 160). Reasonable diligence is examined under a subjective test, and it must be considered in light of the particular circumstances of the case. *See Ross*, 712 F.3d at 799; *Schlueter v. Varner*, 384 F.3d 69, 74 (3d Cir. 2004) ("Due diligence does not require the

maximum feasible diligence, but it does require diligence in the circumstances.") (emphasis added) (internal quotation marks and citation omitted).

The court also must determine whether extraordinary circumstances exist to warrant equitable tolling. "[G]arden variety claim[s] of excusable neglect" by a petitioner's attorney do not generally present an extraordinary circumstance meriting equitable tolling. *Holland*, 130 S.Ct. at 2564 (citations omitted); *see also Merritt v. Blaine*, 326 F.3d 157, 168 (3d Cir. 2003). Rather, equitable tolling could be triggered only when "the principles of equity would make the rigid application of a limitation period unfair, such as when a state prisoner faces extraordinary circumstances that prevent him from filing a timely habeas petition and the prisoner has exercised reasonable diligence in attempting to investigate and bring his claims." *LaCava*, 398 F.3d at 275-276; *see also Holland*, 130 S.Ct. at 25 62 (relying on *Pace*, 544 U.S. at 418).

Indeed, extraordinary circumstances have been found only where: (a) the respondent has actively misled the plaintiff, (b) the petitioner has in some extraordinary way been prevented from asserting his rights, (c) the petitioner has timely asserted his rights mistakenly in the wrong forum, *see Jones*, 195 F.3d at 159, or (d) the court itself has misled a party regarding the

steps that the party needs to take to preserve a claim. *See Brinson v. Vaughn*, 398 F.3d 225, 230 (3d Cir. 2005).

Nevertheless, it must be restated that, even where extraordinary circumstances do exist, "if the person seeking equitable tolling has not exercised reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing." *Brown v. Shannon*, 322 F.3d 768, 773 (3d Cir. 2003) (quoting *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000)).

There are no bright lines in determining whether equitable tolling is warranted. *See Pabon v. Mahanoy*, 654 F.3d 385, 399 (3d Cir. 2011). In determining whether equitable tolling is appropriate, "the particular circumstances of each petitioner must be taken into account," *see id.*, and each decision made a case-by-case basis. *See Holland*, 130 S.Ct. at 2563. The Third Circuit has explained, consistent with Supreme Court holdings in *Holland*, 130 S.Ct. at 2562 and *Pace*, 544 U.S. at 418, that "equitable tolling is appropriate when principles of equity would make rigid application of a limitation period unfair, but that a court should be sparing in its use of the doctrine." *Ross*, 712 F.3d at 799 (citing *Pabon*, 654 F.3d at 399); *see also*

*Jenkins*, 705 F.3d at 89; *Urcinoli v. Cathal*, 546 F.3d 269, 278 (3d Cir. 2008).

Petitioner argues here that he is entitled to equitable tolling because he diligently pursued his remedies, and because this Court's dismissal of his first federal habeas petition on December 13, 2007, constituted an extraordinary circumstance warranting equitable tolling. (Dkt. # 30, Petitioner's Traverse at 15-17.)   Namely, it would appear that Petitioner is arguing that the December 13, 2007 dismissal of his first federal habeas petition as a mixed petition containing unexhausted claims was an extraordinary event that prevented him from preserving his federal habeas claims.   He relies on *Brinson*[8] for this argument. In particular, Petitioner contends that he relied to his detriment upon the Court's December 13, 2007 Order, which denied Petitioner's request for a stay of his first habeas petition and stated that Petitioner's second PCR petition re-tolled his limitations period and left four and a half months to file a new habeas petition upon completion of his second state PCR review.

---

[8] In *Brinson*, the Third Circuit held that the one-year limitations period was equitably tolled during the period after the district court had erroneously dismissed a prior habeas petition for non-exhaustion of a claim asserting racially-motivated peremptory challenges that had, in fact, been exhausted on direct appeal.   The Court of Appeals reasoned that the district court's "mistaken dismissal of Brinson's first petition prevented Brinson in a sufficiently extraordinary way from asserting his rights under the federal habeas statute." 398 F.3d at 231.

(*See Chisolm v. Ricci*, Civil No. 07-5875 (JAP), Dkt. # 2 – December 13, 2007 Order at ¶ 13.)

Moreover, Petitioner argues that he diligently pursued his rights in reliance upon the Court's December 13, 2007 Order, by filing this habeas petition on June 1, 2010, less than four and a half months after the Supreme Court of New Jersey denied certification on his appeal from the dismissal of his second state PCR petition on February 25, 2010. (Ra18.)

This Court is guided by the Third Circuit's decision in *Urcinoli*, *supra*, in examining Petitioner's argument for equitable tolling. In *Urcinoli*, the petitioner, Urcinoli, filed his first federal habeas petition on August 5, 2002, several months after his first state PCR proceedings concluded on May 22, 2002. The district court independently determined that Urcinoli had not exhausted five of his eight claims, rendering the habeas petition an invalid mixed petition. The district court further noted that Urcinoli could still file another state PCR petition to exhaust those claims. Accordingly, the court dismissed the petition on October 31, 2003. *Urcinoli*, 546 F.3d at 271. The Third Circuit observed that, by October 31, 2003, fourteen months had passed since Urcinoli filed his federal habeas petition, and the one-year limitations period under AEDPA had expired. *Id.*

23

Pursuant to the court's October 31, 2003 dismissal of his habeas petition, Urcinoli filed a second state PCR petition on December 13, 2003. The Supreme Court of New Jersey denied certification on appeal from denial of that second state PCR petition on September 12, 2005. Urcinoli then filed his second federal habeas petition on September 29, 2005, raising the same eight grounds from his original petition. On August 3, 2006, the district court dismissed the second federal habeas petition as untimely and declined to equitably toll the limitations period, "reasoning that it was foreclosed from doing so by Third Circuit and Supreme Court precedent." *Id.*, 546 F.3d at 272. The Third Circuit granted a certificate of appealability on the issue of whether Urcinoli was entitled to equitable tolling.

The Third Circuit concluded that Urcinoli was entitled to equitable tolling because he effectively was "prevented from pursuing his habeas claims, in an 'extraordinary way,' when the District Court, relying upon *Rose v. Lundy*, dismissed his timely, fully exhausted claims in a way that ensured they would never be reviewed by a federal court." *Id.* at 273. The Third Circuit acknowledged that the district court had informed Urcinoli, in a footnote, that he could resubmit his habeas petition upon deleting the unexhausted claims, but by the time the district court issued its opinion, any resubmitted petition

24

would have been untimely because the one-year limitations period already had expired. *Id*.

The Third Circuit emphasized that the district court had not erred legally in dismissing Urcinoli's petition without giving him notice and opportunity to respond to the exhaustion issue on the merits, delete the unexhausted claims, or seek a stay of the petition, but even a legitimate action "may constitute an extraordinary circumstance warranting equitable tolling if it later operates to prevent a plaintiff from pursuing his rights." *Id*. at 275. The Third Circuit rested its holding "on the fact that the district court's *sua sponte* dismissal, a circumstance outside of Urcinoli's control and independent of any blameworthy behavior on his part, rendered him unable to pursue his only viable course of action." *Id*. at 277. Finally, the Court of Appeals noted that Urcinoli had exercised reasonable diligence in attempting to pursue his rights by promptly and timely filing his first state PCR petition and his first habeas petition. Urcinoli also promptly filed his second state PCR petition when his first habeas petition was dismissed, and he filed the second habeas petition immediately after state court review concluded on his second PCR petition. *Id*.

This Court finds that neither *Urcinoli* nor *Brinson* provide justification for application of equitable tolling in Petitioner's case. First, in contrast to *Urcinoli*, the one-year limitation period had not yet expired at the time Petitioner filed his first habeas petition, and four and a half months were still remaining on the one-year time frame when this Court issued its Order of Dismissal. This Court plainly stated in its December 13, 2007 Order that Petitioner was not faced with a possible time-bar situation if his petition was dismissed as unexhausted, and gave Chisolm the timetable remaining on his one-year limitations period based on his own account as to the claims raised on direct appeal and state collateral review, and when he had filed his second state PCR petition.

Moreover, the Court had dismissed the petition based on Petitioner's express representation as to the status of his second state PCR petition. Petitioner had represented to the Court that he had timely filed a second state PCR petition, which included claims asserted in the habeas petition, and asked that his habeas petition be stayed until the outcome of state court review, which was still pending when he submitted his habeas petition for filing.[9]   Thus, unlike in *Urcinoli* and

---

[9] The first habeas petition was received by the Clerk's Office on December 6, 2007. However, the signature line of the petition declares that Petitioner executed the petition on November 14,

26

*Brinson*, this Court's December 13, 2007 Order did not set Petitioner on a futile path to pursue unexhausted claims in state court. Indeed, Petitioner already had filed his second state PCR petition at the time he filed his first habeas petition. Further, Chisolm plainly filed his first habeas petition as a protective measure in the event his second PCR petition was procedurally barred, as it was on December 3, 2007, before this Court's Order of dismissal.[10]  Consequently, Petitioner had the time and opportunity to re-file his habeas petition before the statutory deadline of January 31, 2008.

---

2007.  The state PCR court denied the second PCR petition on December 3, 3007.

[10] "A prisoner seeking state postconviction relief might avoid this predicament [of trying in good faith to exhaust state remedies for years only to find out that his state petition was not properly filed and thus, his federal habeas petition is time barred] ..., by filing a 'protective' petition in federal court and asking the federal court to stay and abey the federal habeas proceedings until state remedies are exhausted." *See Pace*, 544 U.S. at 416 (citing *Rhines v. Weber*, 544 U.S. 269, 278 (2005)); *see also Heleva v. Brooks*, 581 F.3d 187, 190–92 (3d Cir. 2009) (discussing the practice of filing "protective" habeas petitions in the Third Circuit).  "A petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute 'good cause' for him to file in federal court." *Pace*, 544 U.S. at 416 (citing *Rhines*, 544 U.S. at 278).  *See also Darden v. Sobina*, 477 F. App'x 912, 918 (3d Cir. 2012).  It is clear in this case that Chisolm filed a protective habeas petition, because he simultaneously asked for a stay and abeyance of his habeas petition while his second state PCR petition was pending.  This action by Chisolm suggests that he may have been aware that his second state PCR petition would be procedurally barred, so he filed his federal habeas petition as a protective measure.

This Court also notes that Chisolm controlled the information he submitted to the Court in his first habeas petition and request for a "stay and abeyance." Petitioner did not impart any information to the Court to suggest that the claims in his second PCR petition were raised previously, or could have been raised previously. Consequently, unlike *Brinson*, this Court did not wrongly determine that Chisolm had unexhausted claims; rather, the Court's determination that the first habeas petition contained unexhausted claims was based on Chisolm's own representations regarding his then-pending second PCR petition and request for a stay and abeyance.[11]

Furthermore, Petitioner's initial habeas petition and his stay request indicate that Petitioner was knowledgeable about the statutory limitations period and his options regarding unexhausted claims. Thus, unlike the petitioner in *Urcinoli*, Petitioner appeared to understand the possibility that his second PCR petition, already filed at the time he submitted his first habeas petition, was procedurally barred, which would

---

[11] In *Brinson*, the petitioner contested the district court's initial decision that his petition contained unexhausted claims. Here, Chisolm made no such argument at the time he filed his first habeas petition. Nor did Chisolm seek reconsideration after this Court issued the December 13, 2007 Order, despite knowing at that time that his second state PCR petition was dismissed as procedurally barred, and thus, nit properly filed.

explain his filing the initial habeas petition while his second PCR petition was pending.

Therefore, this Court concludes that equitable tolling is not appropriate under these circumstances because Petitioner was not prevented from pursuing his habeas claims when this Court dismissed his first habeas petition on December 13, 2007. The December 13, 2007 dismissal did not render Petitioner's habeas claims unreviewable by a federal court because Petitioner had time remaining on his one-year limitations period when the dismissal order was issued. Furthermore, this Court's dismissal of the habeas action occurred after the second PCR petition was dismissed as procedurally barred because it had raised claims previously reviewed and adjudicated. Petitioner therefore had clear notice by the state court adjudication of his second PCR petition that it may not serve to statutorily toll his one-year limitations period as stated in this Court's December 13, 2007 Order of Dismissal. Thus, Chisolm cannot argue that he was placed in an extraordinary predicament of being unable to exhaust state remedies in good faith after his federal habeas petition was time-barred, because he learned before his AEDPA limitations period expired that his second state PCR petition was not "properly filed" for purposes of tolling the one-year limitations period. He had adequate time, a month and a half,

29

to seek reconsideration from this Court's December 13, 2007 Order of dismissal, or at the least to file a new habeas petition asserting that his claims had been raised and exhausted previously on state court review (as determined by the state PCR court in the second PCR proceeding), before his one-year statutory period expired on January 31, 2008.

Finally, the fact that a petitioner is proceeding pro se does not insulate him from the "reasonable diligence" inquiry and his lack of legal knowledge or legal training does not alone justify equitable tolling. *See Ross*, 712 F.3d at 800 (citing *Brown v. Shannon*, 322 F.3d 768, 774 (3d Cir. 2003) (equitable tolling not justified where petitioner had one month left in limitations period in which he could have "fil[ed] at least a basic pro se habeas petition" at the time that petitioner's attorney informed him that he would not file an appeal in state court on his behalf and could no longer adequately represent him). Indeed, as observed above, "garden variety claim[s] of excusable neglect" do not constitute extraordinary circumstances for purposes of equitable tolling. *Holland*, 130 S.Ct. at 2564. Thus, in this regard, instances of "attorney error, miscalculation, inadequate research, or other mistakes have not been found to rise to the 'extraordinary' circumstances required for equitable tolling." *LaCava*, 398 F.3d at 276 (quoting

30

*Merritt*, 326 F.3d at 169).  *See also Sistrunk v. Rozum*, 674 F.3d 181, 190 (3d Cir.2012) (holding that "misreading a court opinion" was not a sufficient basis to permit equitable tolling).

This Court finds that Chisolm was not unfamiliar with the one-year statutory time period, the statutory tolling provision of § 2244(d)(2), or the state procedural rules barring his second state PCR petition, at the time his first habeas action was dismissed.  Thus, he cannot claim lack of legal knowledge or reliance upon this Court's December 13, 2007 decision as a basis for excusable neglect or extraordinary circumstances to justify equitable tolling in this case.

Therefore, because this Court finds that neither statutory tolling nor equitable tolling would apply here, the petition filed on June 1, 2010, more than two years after the January 31, 2008 expiration of Chisolm's one-year limitations period, is time-barred.  The petition will be dismissed with prejudice accordingly.

IV.  <u>CERTIFICATE OF APPEALABILITY</u>

This Court next must determine whether a certificate of appealability should issue.  *See* Third Circuit Local Appellate Rule 22.2.  The Court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the

denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court denies a habeas petition on procedural grounds without reaching the underlying constitutional claim, the prisoner must demonstrate that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.* For the reasons discussed above, this § 2254 habeas petition is time-barred. The Court also is persuaded that reasonable jurists would not debate the correctness of this conclusion. Consequently, a certificate of appealability will not be issued.

V.   <u>CONCLUSION</u>

For the above reasons, this Court finds that the § 2254 habeas petition must be dismissed as time-barred, and that a certificate of appealability will not issue.   An appropriate Order follows.


Date:   July 18, 2013


/s/ Joel A. Pisano
JOEL A PISANO
United State District Judge
